UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THEODORE J. HUMINSKI,        :
                                  :
     Plaintiff,            :
                                  :
v.                            :     Case No. 3:16-cv-01136(RNC)
                                  :
THE STOP & SHOP SUPERMARKET   :
COMPANY LLC,              :
                                  :
     Defendant.           :

## RULING AND ORDER

Plaintiff Theodore J. Huminski brings this disparate
treatment action against his former employer, The Stop & Shop
Supermarket Company LLC ("Stop & Shop"), alleging that his
termination was unlawfully motivated by his age and race.  He
also alleges that he was discharged in retaliation for
complaints that he lodged about age-based and racial
discrimination.  Plaintiff asserts claims under the Age
Discrimination in Employment Act ("ADEA"); Title VII of the
Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 1981;
and the Connecticut Fair Employment Practices Act, Conn. Gen.
Stat. 46a-60 ("CFEPA").  Defendant moves for summary judgment.
For reasons that follow, the motion is granted.

I.  Background

Except as otherwise stated, the following facts are either undisputed, or, where disputed, taken in the light most favorable to the plaintiff.

Plaintiff is white, and was 62 years old when he filed this action.  He began working at a supermarket called First National in December 1969 and became a manager five years later. He became an employee of Stop & Shop as a result of its 1996 merger with First National.  He remained a store manager until his employment was terminated on August 27, 2015.  Earlier that year, plaintiff had gotten into an argument with an employee, Megan Moore-Burrs ("Moore").  Moore told plaintiff that she felt disrespected, and plaintiff instructed her to clock out.  Moore, who is African-American, filed a racial discrimination complaint against plaintiff with the Connecticut Commission on Human Rights and Opportunities and lodged a complaint with her union. Julie Pinard, the human resources (HR) director for the district that included plaintiff's store, was also told about Moore's complaint.  Moore ultimately transferred to a different store.

Brittany Roach also worked at plaintiff's store, and is also African-American.  Roach was friendly with Moore and knew about her complaint against plaintiff.  Roach asked plaintiff if she could transfer in order to accommodate her school schedule.

Roach then spoke with Julie Sabo, who worked at a different Stop & Shop store, about her desire to transfer.

The Stop & Shop Equal Employment Opportunity Policy (EEOP) prohibits unlawful discrimination or harassment of any kind, and provides that any person who engages in harassment "will be subject to disciplinary action up to and including termination of employment." Stop & Shop employees may make anonymous reports of harassment to a toll-free telephone line known as Global Compliance, which are then sent to HR managers.

On August 3, 2015, an anonymous complaint was submitted to Global Compliance containing allegations against plaintiff. The anonymous report stated that plaintiff had made inappropriate and sexual comments to female employees. In one instance, when a female employee was bent over, plaintiff told her, "You are going to have to spread your legs a lot farther to take what I've got to give you." The anonymous complainant also alleged that an associate had recently resigned after plaintiff asked her to go to his house.

After receiving the anonymous report, Pinard interviewed a number of employees at plaintiff's store, specifically, Sabo, Roach, and assistant store manager Adriana Lokko. She also interviewed plaintiff. She then completed a draft report, which is dated August 15, 2015. The report was discussed during telephone calls involving plaintiff's supervisor Cindy Flannery,

Regional Vice President John Stobierski, HR Director Ann Nichols, and HR Vice President Bob Spinella. Following those discussions, plaintiff was terminated on August 27, 2015. On October 2, 2015, Pinard completed a final report, which discusses the resolution of plaintiff's case.

Pinard's draft report summarized the results of Pinard's interviews as follows. Lokko recalled that plaintiff had asked an associate to come to his house and go in his pool, and plaintiff had touched associates, including grabbing their shoulders, rubbing their backs, and hugging them. Sabo reported that Roach had told her that plaintiff had made inappropriate comments and advances toward her, including the remark reported by the anonymous caller. Sabo reported that Roach told her plaintiff asked if he would have a chance with her if he bought her a house or a car prompting Roach to try to transfer to a different store. Consistent with Sabo's report to Pinard, Roach told Pinard that plaintiff had been making inappropriate comments for several months, including the comment reported by the anonymous caller, and had invited her to his house. Roach also stated that plaintiff had teased her for having a crush on another colleague and said that he was jealous; that he offered to buy her a house and a car if she would divorce her husband; and that another female associate had quit because plaintiff had invited her to his house.

The August 15, 2015 draft report also set forth plaintiff's disciplinary history as follows.  In December 2003, plaintiff was counseled "on not touching associates."  In April 2005, Spinella and two others gave him a final warning for inappropriate behavior.  In October 2005, he received another final warning for inappropriate behavior from Spinella and his district manager.  In March 2013 he was given a written warning for receiving an unsatisfactory score on a store audit.

Following his termination, plaintiff's position was taken over temporarily by Art Sousa, who was in his 50s.  Sousa was briefly replaced by Ray Young, who was 50 or 51.  After a few months, Young's position was briefly taken over by Reginald Dormevil, who was approximately 37.  Dormevil was then replaced by Vince Damato, who was approximately 30.  Sousa, Young and Damato are white.  Dormevil is African-American.

II.  Legal Standard

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In determining whether the moving party is entitled to judgment as a matter of law, the Court must review all the evidence in the record in the light most favorable to the opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary judgment may not be granted if the

non-moving party can point to evidence that would permit a jury to return a verdict in his or her favor.  Id. at 252.

"A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).  However, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).  Conclusory allegations, conjecture, and speculation are insufficient to create a genuine dispute of material fact.  Shannon v. New York City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003).

III. Discussion

Plaintiff alleges that his termination was unlawfully motivated by his age and race.[1]  He first invokes the "cat's paw" theory of liability, which applies when "a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." EEOC v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d 476, 484 (10th Cir. 2006).  According to plaintiff, Pinard's report was full of falsehoods motivated by

---

[1] Plaintiff also alleges that he was denied severance.  To the extent that plaintiff argues that this severance denial was an adverse employment action, he has not shown that it was motivated by discriminatory intent for reasons discussed below.

6

discriminatory or retaliatory intent, and, in terminating his employment, defendant became a conduit for unlawful prejudice. As discussed below, the evidence in the record is insufficient to sustain liability based on this theory.

Plaintiff also seeks to show that defendant's stated justification for his termination – the allegations documented by Pinard – is mere pretext for its true, discriminatory motive. However, plaintiff has not adduced sufficient evidence to raise a triable issue of fact regarding whether defendant's reason for firing him was pretextual.

Finally, plaintiff argues that he suffered retaliation for making complaints of age and racial discrimination. Plaintiff's evidence would not permit a jury to find for him on this claim. Defendant's motion for summary judgment will therefore be granted.

A. Age Discrimination

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "The ADEA covers the class of individuals who, like [plaintiff], are over the age of 40." Hollander v. Am. Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999) (citing 29 U.S.C. § 631(a)), abrogated on other grounds by

Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000). "'[A]

plaintiff bringing a disparate-treatment claim pursuant to the

ADEA must prove, by a preponderance of the evidence, that age

was the "but-for" cause of the challenged adverse employment

action' and not just a contributing or motivating factor."

Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir.

2010) (quoting Gross v. FBL Fin. Serv., Inc., 557 U.S. 167, 180

(2009)).

### i.   Cat's Paw

Under the "cat's paw" theory of liability, "an employee's

retaliatory [or discriminatory] intent may be imputed to an

employer where . . . the employer's own negligence gives effect

to the employee's retaliatory [or discriminatory] animus and

causes the victim to suffer an adverse employment decision."

Vasquez v. Empress Ambulance Serv., Inc., 835 F.3d 267, 269 (2d

Cir. 2016). The Second Circuit has recognized the availability

of this theory of liability under Title VII. See id. Although

the Second Circuit has not so held, it follows that the theory

should be available in cases arising under the ADEA. See Univ.

of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013)

(noting "the lack of any meaningful textual difference between

the text in" Title VII's antiretaliation provision and the

ADEA).

However, plaintiff cannot prevail under the "cat's paw" theory, because he cannot show that Pinard harbored "discriminatory or retaliatory intent." <u>Vasquez</u>, 835 F.3d at 275. Plaintiff points to two comments as evidence of Pinard's alleged age bias. First, about a year before plaintiff's termination, Pinard remarked that "we need to develop young and upcoming people to replace our older associates." ECF No. 72-3 at 24. Second, when Lokko transferred to plaintiff's store, Pinard told him that "[s]he's an up-and-coming high flier to become a manager and I just want you to, you know, do what you have to do, take care of her." <u>Id.</u> at 23. These comments cannot support an inference that Pinard was motivated by plaintiff's age when investigating his alleged misconduct or writing her report. See <u>Henry v. Wyeth Pharm., Inc.</u>, 616 F.3d 134, 149 (2d Cir. 2010).[2]

---

[2] Plaintiff also highlights an incident in which he and Pinard argued about the conduct of one of plaintiff's supervisees. He does not assert that any age-related comments or other age-based discrimination occurred during this incident, and the record does not show that any did. Even if Pinard were upset with plaintiff before she began her investigation, this would not support plaintiff's argument under the "cat's paw" theory. The Second Circuit has "emphasize[d] that such an approach should not be construed as holding an employer liable simply because it acts on information provided by a biased co-worker." <u>Vasquez</u>, 835 F.3d at 275 (internal citations and quotation marks omitted).

The Second Circuit has identified four factors to consider in determining whether a remark is probative of discriminatory intent: "(1) who made the remark . . . ; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." Id. That Pinard made the remarks is relevant insofar as plaintiff seeks to show that she was biased. The remaining factors weigh against plaintiff. He testified that the first remark was made about a year before his termination, ECF No. 72-3 at 24, and the record is silent as to the timing of the second remark or when Lokko transferred to plaintiff's store. While the first comment speaks of "replac[ing]" older associates, the most reasonable inference is that Pinard was referring to the need to plan for older employees' retirement. The second cannot reasonably be viewed as discriminatory; if anything, Pinard's request that plaintiff "take care of" Lokko assumed that he would be store manager for the foreseeable future. Finally, neither remark was related to the decision to fire plaintiff. Even taken together, they cannot demonstrate age-related animus. See Henry, 616 F.3d at 149 ("[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the

action was motivated by discrimination.") (internal citation omitted); Delgado v. City of Stamford, No. 11-CV-01735 (VAB), 2015 WL 6675534, at *19 (D. Conn. Nov. 2, 2015) (finding that "a stray remark removed approximately 10 months from the decision to transfer [p]laintiff, and . . . not made in relation to that decision" failed to create a triable question of discriminatory intent).

Plaintiff also disputes Pinard's factual findings. "In a discrimination case, however, we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what 'motivated the employer.'" McPherson v. NYC Dept of Educ., 457 F.3d 211, 215 (2d Cir. 2006) (emphasis in original) (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). "[T]he factual validity of the underlying imputation against the employee is not at issue." Id. Additionally, plaintiff attacks the process by which Pinard investigated the complaints against him, but "[t]he ADEA, of course, does not mandate that employers use any particular procedures for investigating allegations of employee misconduct. Defendant's investigatory procedures are only relevant if they give rise to an inference that the investigation was a sham designed to mask [d]efendant's discriminatory agenda." Saenger v. Montefiore Med. Ctr., 706 F. Supp. 2d 494, 515 (S.D.N.Y. 2010). "Put simply, an employer can still 'just get it wrong'

11

without incurring liability . . . but it cannot 'get it wrong' without recourse if in doing so it negligently allows itself to be used as a conduit for even a low-level employee's discriminatory or retaliatory prejudice." Vasquez, 835 F.3d at 275-76.  As discussed, plaintiff has not adduced evidence that would permit a reasonable jury to determine that Pinard possessed such prejudice.

Furthermore, plaintiff has not shown that defendant acted negligently in relying on Pinard's report.  "[A]n employer who, non-negligently and in good faith, relies on a false and malign report of an employee who acted out of unlawful animus cannot, under this 'cat's paw' theory, be held accountable for or said to have been 'motivated' by the employee's animus." Id. at 275. In Vasquez, the Second Circuit determined that the employer had acted negligently in firing the plaintiff after 1) receiving evidence put forward by an employee whom the employer knew to have a retaliatory motive, and 2) refusing to view counter-evidence offered by the accused.  Id. at 269, 276.  Pinard, by contrast, conducted an investigation over the course of two weeks, and spoke with plaintiff twice.  See generally ECF No. 72 Exh. 25.  Several of the allegations in her report were corroborated by multiple witnesses.  Id.  Indeed, plaintiff has admitted to making some of the alleged comments.  ECF No. 72-3 at 33.  Furthermore, the allegations of harassment were

consistent with the disciplinary history included in Pinard's
report, which included two final warnings for "inappropriate
behavior." ECF No. 72 Exh. 25 at 6. Because plaintiff provides
no basis on which to conclude that defendant was negligent in
relying on Pinard's report, he cannot recover on the basis of
his age under the "cat's paw" theory of liability.

ii. McDonnell-Douglas

Plaintiff also argues that a jury could find defendant's
ostensible reason for firing him pretextual and conclude that
his age was the true motivation. ADEA claims are analyzed under
the familiar McDonnell-Douglas framework borrowed from the Title
VII context. Gorzysnki, 596 F.3d at 106 (citing McDonnell-
Douglas Corp. v. Green, 411 U.S. 792 (1973)). This framework
places the initial burden on the plaintiff to establish a prima
facie case of discrimination. Id. "In order to establish
a prima facie case of age discrimination, the plaintiff must
show that he was (1) within the protected age group; (2)
qualified for the position; (3) discharged; and (4) that such
discharge occurred under circumstances giving rise to an
inference of discrimination." Carlton v. Mystic Transp., Inc.,
202 F.3d 129, 134 (2d Cir. 2000).

The burden then shifts to the defendant to articulate "some
legitimate, nondiscriminatory reason" for the adverse employment
action. McDonnell-Douglas, 411 U.S. at 802. If the defendant

13

can do so, "the presumption of discrimination raised by the prima facie case 'simply drops out of the picture.'" Carlton, 202 F.3d at 134-35 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993)). The burden then falls back on the plaintiff to adduce evidence that the proffered reason is pretextual. Gorzynski, 596 F.3d at 106. "A case-by-case examination is warranted to determine whether the prima facie showing plus pretext could satisfy the plaintiff's 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 93-94 (2d Cir. 2001) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

> Reeves recognized that in some circumstances a defendant could prevail as a matter of law even after a plaintiff's showing of pretext and offered two scenarios as examples. One is where the record "conclusively revealed some other, nondiscriminatory reason for the employer's decision," [530 U.S.] at 148. . . . A second is where the "plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." [Id.]

Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).

Plaintiff has made a prima facie showing. He was over 40 at the time of his termination, and the parties do not dispute

that he was qualified to be store manager.  Carlton, 202 F.3d at
134.  Furthermore, he was replaced by a substantially younger
employee, and "[g]enerally, a plaintiff's replacement by a
significantly younger person is evidence of age discrimination."
Id. at 135.  Defendant has also met its burden of articulating a
legitimate, non-discriminatory reason for terminating plaintiff:
its belief, based on Pinard's August 2015 report, that plaintiff
had violated Stop & Shop's anti-harassment policy after having
received two final warnings for inappropriate behavior.  The
burden thus shifts back to plaintiff to show that this reason
was pretextual, and that his age was a "but-for" cause of his
termination.  Gorzynski, 596 F.3d at 106.

As discussed below, while most of plaintiff's arguments
regarding age discrimination fail, the record provides some
support for his claim: he was replaced by a younger employee and
his supervisor had made a comment that could give rise to an
inference of age-based bias.  However, given the decisionmakers'
undisputed reliance on Pinard's report, this evidence is
insufficient to show that the stated reason for his termination
was a pretext to conceal discrimination.  See Zimmerman, 251
F.3d at 381.

a. Duties Taken Over by Younger Employees

Plaintiff argues that summary judgment may not be granted
because his duties were taken over by younger employees.  As

discussed, plaintiff was temporarily replaced by Art Sousa, and then by Ray Young, who is approximately ten years plaintiff's junior.  Plaintiff argues that Young was not intended to be a permanent replacement, but he provides no evidence for this assertion.  Even so, because Young served as store manager for only a couple of months, and because at this stage all factual disputes must be resolved in plaintiff's favor, I will assume that Young was not plaintiff's true replacement for purposes of his ADEA claim.  See Hollander, 172 F.3d at 199 n.3 (resolving factual dispute over plaintiff's replacement in plaintiff's favor at summary judgment stage). Young was briefly replaced by Reginald Dormevil, who is in his late 30s, and then by Vin Amato, who is also in his 30s.

"The replacement of an older worker with a younger worker or workers does not itself prove unlawful discrimination." Fagan v. N.Y. State Elec. & Gas Corp., 186 F.3d 127, 134 (2d Cir. 1999).  Furthermore, Amato's "age is collateral to the record of [p]laintiff's misconduct made available to [d]efendant." Saenger, 706 F. Supp. 2d at 494.  That plaintiff's duties were inherited by a younger employee is sufficient to establish a prima facie case, but not to defeat summary judgment.  See Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 317 (2d Cir. 1999) (summary judgment was appropriate

on plaintiff's ADEA claim, even though she was replaced with an employee fourteen years her junior).

### b. Age-Related Comments

Plaintiff also points to two comments by his supervisor, Cindy Flannery. Because Flannery was involved in the decision to terminate plaintiff, comments revealing age-based animus could be relevant. Cf. Henry, 616 F.3d at 150 (offensive remark not probative when declarant was not involved in allegedly discriminatory actions).

Plaintiff testified that, in instructing him to fire a supervisee with a poor performance record, Flannery stated, "he's been around too long. He's too old. He doesn't get it. If he doesn't get it by now, he's never going to get it." ECF No. 72-3 at 14.[3] According to plaintiff's testimony, Flannery made this statement in 2011 or 2012, several years before he was discharged. Id. The passage of time undercuts the probative value of the statement as support for plaintiff's claim. See Wesley-Dickson v. Warwick Valley Cent. Sch. Dist., 586 F. App'x 739, 743 (2d Cir. 2014) (supervisor's comment made six months before plaintiff's probationary term was extended, and 18 months

---

[3] Plaintiff asserts that Flannery instructed him to create a record of poor performance in order to justify terminating this employee, and relies on his deposition for support. ECF No. 72-1 at 28. But no such allegation appears in the deposition. ECF No. 72-3 at 14.

before she was denied tenure, was too temporally removed from adverse action to raise a triable issue of pretext). Furthermore, the remark evinces more frustration that the employee had not mastered the job after many years than bias against older workers. The statement's context and timing are so remote that it is not probative of any discriminatory intent behind plaintiff's firing. See Henry, 616 F.3d at 149.

Plaintiff also testified that Flannery asked him when he was going to retire, and when he replied that he had no plans to retire, she responded, "I just can't see you working that long." ECF No. 72-3 at 37. A reasonable juror could view this as pressuring plaintiff to retire. See Henry, 616 F.3d at 149. In Carlton, the suggestion that plaintiff retire furnished support for his prima facie case. 202 F.3d at 136. The Second Circuit explained that "[a]lthough evidence of one stray comment by itself is usually not sufficient proof to show age discrimination, that stray comment may 'bear a more ominous significance' when considered within the totality of all the evidence." Carlton, 202 F.3d at 136 (quoting Danzer v. Norden Sys. Inc., 151 F.3d 50, 56 (2d Cir. 1998)). And in Hopkins v. New England Health Care Employees Welfare Fund, evidence that the plaintiff's supervisor "repeatedly" asked when he was going to retire to the point of "badgering" him, together with other evidence of age-based animus, was sufficient to preclude summary

judgment on plaintiff's ADEA claim.  985 F. Supp. 2d 240, 258
(D. Conn. 2013).

However, as discussed below, none of plaintiff's other
evidence supports a reasonable inference that his age was a but-
for cause of his termination.  That plaintiff was replaced by a
younger employee, paired with a single comment regarding whether
plaintiff will retire, is insufficient to raise a triable
question of pretext given the allegations against him in
Pinard's draft report, which triggered his termination.  Cf.
Carlton, 202 F.3d at 136; Hopkins, 985 F. Supp. 2d 240 at 258.

### c. Inconsistent Application of Anti-Harassment Policy

Plaintiff seeks to show defendant's bias against older
workers by arguing that defendant did not fire younger employees
accused of comparable offenses.[4]  "[M]ore favorable treatment of
employees not in the protected group" can permit an inference of
discrimination, Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37
(2d Cir. 1994), if those employees are "similarly situated in

---

[4] The record contains the ages of five out of the six employees
that plaintiff presents as comparators.  See ECF No. 64 at 79-
81; ECF No. 72-1 at 42-43.  All five were over forty at the
relevant times, and therefore, strictly speaking, within the
class protected by the ADEA.  See 29 U.S.C. § 631(a).  Because
they are all younger than plaintiff, however, I will assume that
a supported claim of differential treatment could be probative
of discrimination.  See Saenger, 706 F. Supp. 2d at 513-14
(considering whether plaintiff's 50-year-old colleague was
similarly situated and differentially treated for purposes of
analyzing his ADEA claim).

all material respects," Hogan v. State of Conn. Judicial Branch,
220 F. Supp. 2d 111, 119 (D. Conn. 2002), aff'd, 64 F. App'x 256
(2d Cir. 2003) (quoting Shumway v. United Parcel Serv., Inc.,
118 F.3d 60, 64 (2d Cir. 1997)).  The comparators plaintiff puts
forth do not meet this standard.

Plaintiff points to younger colleagues who were not
terminated for the following conduct: failing to clean up
offensive graffiti and being rude to an employee who then
alleged age-based discrimination; scolding an associate's son
for allegedly stealing, and making physical contact with the son
in the process; having a consensual relationship with a
colleague; terminating a subordinate whom Stop & Shop determined
should be reinstated; making racist and sexist comments; and
flirting with associates.

That these acts by plaintiff's comparators are sufficiently
comparable to the allegations against him in Pinard's draft
report to constitute "comparable conduct" is doubtful.  Cf.
Hogan, 220 F. Supp. 2d at 119 (comparators were not similarly
situated where they were accused of verbal abuse, and plaintiff
was accused of physical abuse).  Even assuming they are,
however, none of the comparators had previously received final
warnings for inappropriate behavior.  See ECF No. 61 Exhs. 41-
44.  Because the comparators were not "similarly situated in all
material respects," Shumway, 118 F.3d at 64, defendant's

decision to not terminate them is not probative of
discriminatory intent.  Cf. Greenway v. Buffalo Hilton Hotel,
143 F.3d 47, 50-51 (2d Cir. 1998) (where plaintiff was fired
after receiving four disciplinary write-ups, and employees
outside protected class had received many more write-ups without
facing termination, a jury could find pretext).[5]

### d. Ranking and Succession Planning

Plaintiff further alleges that defendant has a policy or
practice of replacing older store managers with younger
employees.  As evidence he offers the 2013, 2014, and 2015
rankings of store managers in his district.  He observes that in
2013, the three oldest managers were ranked the lowest; in 2014,
eight of the top eleven were in their 30s or 40s, and four of
the six bottom slots were occupied by managers over the age of
50; and in 2015, no managers over 60 remained.  Plaintiff also
takes issue with defendant's succession planning, or Management
Development ("MD"), program.  Through the MD program, defendant
identifies assistant store managers that show talent and what
needs to be done to develop that talent, as well as managers who
are struggling and need a particular type of training.  ECF No.

---

[5] Plaintiff also notes that, when accused of harassment as a
younger man, he was not terminated.  But this shows that
plaintiff was treated similarly to the employees he offers as
comparators; he was not fired the first or even second time he
was found to have engaged in misconduct, but rather, after
repeatedly failing to heed defendant's warnings.

72-4 at 5.  Plaintiff points to notes from a 2014 MD program
meeting, which he asserts shows that younger employees are
promoted more often than their older counterparts; and a
"performance-potential matrix" produced during an MD program
meeting, which plaintiff reads as assigning lower rankings to
older employees.

This evidence is not probative of pretext, for a number of
reasons.  First, plaintiff cannot show that his termination was
related to the store manager rankings or the MD program.
Defendant's stated reason for firing him was his reported
misconduct, and not any performance issue.  While even
statistically insignificant data may be relevant to a disparate
treatment claim, "more particularized evidence relating to the
individual plaintiff is necessary to show discriminatory
treatment."  Martinez v. David Polk & Wardwell LLP, 713 F. App'x
53, 55 (2d Cir. 2017) (quoting Zahorik v. Cornell Univ., 729
F.2d 85, 95 (2d Cir. 1984)).  Cf. United States v. City of New
York, 717 F.3d 72, 84 (2d Cir. 2013) ("In a pattern-or-practice
case, the plaintiff's initial burden is . . . lighter in that
the plaintiff need not initially show discrimination against any
particular present or prospective employee.").

Plaintiff's reliance on Schanzer v. United Technologies
Corp. is thus misplaced.  120 F. Supp. 2d 200 (D. Conn. 2000).
In Schanzer, the employer had used a "paired comparison"

process, in which employees were stacked against each other with respect to undefined criteria including "future potential," and then selected for layoffs based on those comparisons.  Id. at 203, 209.  The court admitted expert testimony, supported by statistical analysis, that the employee ratings and layoff decisions were significantly related to whether employees were at least forty years old.  Id. at 204.  Because the plaintiffs had been terminated as a result of the "paired comparison" process, its use could support a disparate treatment claim.  Id. at 208-09, 212.  Here, by contrast, plaintiff has adduced no evidence, other than his own speculation, that the store manager rankings or MD program played a role in his termination.  See Shannon, 332 F.3d at 99 (speculation cannot create a genuine dispute of material fact).

Additionally, plaintiff's assertion that length of service is a factor in management's determination of who shows potential is unsupported.  The portion of the record to which he cites for this claim is Stobierksi's testimony that length of service is included on MD documents "for informational purposes, but it's not used as, really it's not used as a tool."  ECF No. 72-4 at 9.  Cf. Sharp v. Aker Plant Servs. Grp., Inc., 726 F.3d 789, 801 (6th Cir. 2013) (employer favored employees with potential longevity, which was simply a proxy for age); Shannon v.

Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 292-93 (S.D.N.Y. 2001) (termination decisions were driven by "future potential").

Plaintiff has presented only "[r]aw data purportedly describing a pattern of under-representation and unequal opportunity," which "is little but an unsupported hypothesis providing no foundation for the assertion that there was discrimination" in the adverse employment action at issue. Weinstock v. Columbia Univ., 224 F.3d 33, 46 (2d Cir. 2000). Plaintiff has offered a few figures from the 2013, 2014, and 2015 store manager rankings as evidence that older store managers are disfavored. Read differently, however, the rankings do not support this narrative. For example, in 2012 the lowest ranked manager was also the youngest, and the oldest store manager came in third; in 2015, the youngest store manager was third from the bottom. ECF No. 64 at 79-81; ECF No. 72 Exhs. 15, 17, 18. It is not material that plaintiff's district had no store managers over the age of 60 in 2015; one had transferred to another district, and the remaining two retired. See ECF No. 61-3 at 16; ECF No. 72-5 at 29-30; ECF No. 72-6 at 5; Hollander, 172 F.3d at 203 (statistical evidence could not permissibly support inference where plaintiff failed to account for voluntary departures). Similarly, the "performance-potential matrix" that plaintiff argues shows a bias for younger employees identifies two of the youngest store managers as

needing improvement, and places plaintiff in the middle bracket.
ECF No. 72 Exh. 22.

"If the plaintiff seeks to prove the discrimination by
statistical evidence, . . . the statistics must support
reasonably the inference that the employer's adverse decision
would not have occurred but for discrimination." Pollis v. New
Sch. for Soc. Research, 132 F.3d 115, 123 (2d Cir. 1997).  For
example, in Stratton v. Department for the Aging for the City of
New York, the plaintiff offered evidence that the average age in
her department had declined from 50.3 to 45.9 in a little over a
year after a new commissioner took office.  132 F.3d 869, 873
(2d Cir. 1997).  The Second Circuit concluded that evidence of
this average, taken without selective sampling and using simple
arithmetic, was properly admitted as evidence of disparate
treatment.  Id. at 876-77.

Gomez v. Metropolitan District is similarly instructive.
See 10 F. Supp. 3d 224 (D. Conn. 2014). In Gomez, in support of
his retaliation claim, the plaintiff offered evidence that all
six of the non-union employees who had filed complaints or
otherwise opposed discrimination were included in the
defendant's reduction in force (RIF).  Id. at 240.  This
evidence could support a reasonable inference of discrimination,
even though the sample size was small, because the correlation
was 100%, the protected activity occurred over a short period of

25

time before the RIF occurred, and all the terminations resulted from the same process.  Id.

Here, by contrast, plaintiff has not produced any percentages from which a jury could draw a conclusion, but rather offers only a few pieces of raw data.  And the data here lack a causal connection to plaintiff's termination, unlike in Gomez.

"[T]he Second Circuit has specifically cautioned against allowing the manipulation of statistical data through selective grouping of employees, and instead recommends that all employees subject to the process be included in the statistical analysis." Schanzer, 120 F. Supp. 2d at 207 (emphasis in original). Plaintiff's assertion that only people in their 30s and 40s were hired or promoted over particular time periods fails to heed this warning because it does not reveal who was passed over. Without a comparison group, a jury could not reasonably infer discrimination from these figures.  For the same reason, plaintiff's evidence of other store managers over 60 who departed or were terminated is not probative.  See Saenger, 706 F. Supp. 2d at 515 ("[T]he data in the record only contains the ages of the doctors who Defendant fired, it does not provide the ages of the doctors that Defendant did not fire." (emphasis in original)); cf. Hayes v. Compass Group USA, 343 F. Supp. 2d 112, 119 (D. Conn. 2004) ("[Plaintiff's] statistical evidence of

26

other terminations may establish a pattern or practice of age discrimination if it evinces a statistical disparity.").

On this record, plaintiff cannot sustain a claim that defendant had a pattern or policy of pushing out older store managers to make room for younger employees.

      e. <u>Sequence of Events and Failure to Conduct a Proper</u>
         <u>Investigation</u>

Plaintiff argues that the sequence of events supports a finding that "defendant concocted a discriminatory plan to justify [his] unlawful termination." ECF No. 72 at 32. He asserts that defendant decided to terminate his employment before Pinard's investigation even began. But he cites no record evidence to support such a claim. <u>Cf.</u> <u>Dunson v. Tri-Maint. & Contractors, Inc.</u>, 171 F. Supp. 2d 103, 111 (E.D.N.Y. 2001) (jury issue existed as to whether decision to terminate plaintiff predated investigation where, among other things, investigator was informed of the decision to terminate plaintiff at the start of the investigation).

Plaintiff notes that Pinard's final report was completed in October 2015, after he was terminated. Because the report contains the case resolution, however, it could not have been completed before his termination. Moreover, her draft report of August 15, 2015, on which the decisionmakers relied in

determining that plaintiff should be fired, provided ample information about his alleged misconduct.

Plaintiff also argues that defendant failed to conduct a good faith investigation into the complaints against him. "[I]t is not the role of federal courts to review the correctness of employment decisions or the process by which those decisions are made." Sassaman v. Gamache, 566 F.3d 307, 314 (2d Cir. 2012). As discussed, defendant's procedures "are only relevant if they give rise to an inference that the investigation was a sham designed to mask [d]efendant's discriminatory agenda." Saenger, at 515. "[T]he ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their age." Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir. 1998) (emphasis in original).

To support his claim that the investigation was conducted in bad faith, plaintiff asserts that defendant failed to follow its own protocol. He acknowledges, however, that defendant has no fixed procedure for investigating misconduct complaints. ECF No. 72 at 15, 31. Moreover, the record reflects that after receiving the anonymous complaint of inappropriate behavior against plaintiff, Pinard asked one of his female subordinates if there was anything she should know. ECF No. 72 Exh. 25 at 2. Pinard followed the same steps in 2010 after receiving an

anonymous complaint against a different store manager, whom plaintiff claims was treated preferentially because he is younger. ECF No. 76-4 at 2, 4. In addition, Pinard was not a decisionmaker. She merely presented the information on which the decision was made. Any alleged impropriety on her part thus is relevant only through the "cat's paw" approach, which does not support plaintiff's claim for reasons stated earlier.

Plaintiff's reliance on Henry v. Daytop Village, Inc. is misplaced for the same reason. 42 F.3d 89 (2d Cir. 1994). In that case, the plaintiff presented evidence that company officials themselves had "trumped up false charges as a pretext for firing her." Id. at 96. In this case, plaintiff does not allege that those involved in his termination invented the allegations against him. He argues, rather, that the allegations were not properly investigated. Plaintiff has not offered any evidence that defendant decided to terminate him before Pinard conducted her investigation, or that the investigation was a sham designed to conceal a discriminatory motive.[6]

---

[6] Plaintiff also alleges that defendant failed to consider his own complaints of unfair treatment over the course of the investigation. This argument has no bearing on whether defendant's investigation was motivated by a discriminatory purpose. Plaintiff cites Sassaman, in which the employer's failure to properly investigate claims made against the plaintiff provided evidence of discrimination. 566 F.3d at 312. Furthermore, it is unclear to what complaints of unfair

Plaintiff has created only a weak issue of fact as to whether defendant's stated reason for his discharge was pretextual.  See Zimmerman, 251 F.3d at 381.  Based on the foregoing analysis, I conclude that this is insufficient to enable him to avoid summary judgment on the ADEA claim.

B. Racial discrimination

Plaintiff next argues that he was discriminated against on the basis of his race in violation of Title VII, 42 U.S.C. § 1981 (and the CFEPA).  When a plaintiff alleges racial discrimination, "but-for causation is not the test.  It suffices instead to show that the motive to discriminate was one of the employer's motives."  Nassar, 570 U.S. at 343.  As with the ADEA claim, plaintiff seeks to proceed under the "cat's paw" theory and the McDonnell-Douglas framework.

i. "Cat's paw"

Plaintiff cannot show racial discrimination under the "cat's paw" theory of liability.  Plaintiff cites no evidence that Pinard, who is white, harbored any discriminatory intent on the basis of plaintiff's race.  He does question Pinard's decision to begin her investigation by speaking with Lokko, who

---

treatment plaintiff refers.  To the extent plaintiff asserts that he reported discrimination based on his race and age, this assertion is discussed infra with respect to his retaliation claim.

30

is African-American, and who was upset with plaintiff about a
recent incident involving alleged misconduct by a grocery
manager. He offers no evidence that this incident or Lokko's
resulting anger towards him was related to race, and the mere
fact that Lokko is African-American cannot sustain an inference
that she harbored racial animus against plaintiff.

Plaintiff also suggests that Moore had a retaliatory motive
because he had reprimanded her, and that Roach shared this
motive because the two were friends. He observes that they both
sought a transfer around the same time. As discussed above, the
cat's paw theory allows an employer to be held liable when "it
negligently allows itself to be used as a conduit even for a
low-level employee's discriminatory or retaliatory prejudice."
Vasquez, 835 F.3d at 275-76. However, "such an approach should
not be construed as holding an employer liable simply because it
acts on information provided by a biased co-worker." Id. at 275
(internal citations and quotation marks omitted).

Even if Moore or Roach had a retaliatory motive toward
plaintiff, he cannot show that it was related to his race.
Title VII only protects retaliation for opposing discriminatory
conduct. Hopkins, 985 F. Supp. 2d at 250. In reprimanding
Moore, plaintiff was not opposing discriminatory conduct, but
merely acting as her supervisor. "Personal animosity and even
unfair treatment are not actionable under Title VII unless

31

discrimination is a motivating factor." Pesok v. Hebrew Union
Coll.—Jewish Inst. of Religion, 235 F. Supp. 2d 281, 288
(S.D.N.Y. 2002). Plaintiff also points to Moore's civil rights
complaint as evidence of her bias against him, and faults Pinard
for omitting mention of the complaint in her report. If
plaintiff would ask a jury to infer anti-white animus from the
fact that Moore filed a complaint against him, such an inference
would not be reasonable. Plaintiff cannot show that his
termination was motivated by his race under the "cat's paw"
theory of liability.

ii. McDonnell-Douglas

Racial discrimination claims under Title VII of the Civil
Rights Act, 42 U.S.C. § 1981, and the CFEPA are properly
analyzed under the McDonnell-Douglas burden-shifting framework.
See Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir.
2010) (Title VII and 42 U.S.C. § 1981); Toro v. Arnold Foods
Co., Inc., 620 F. Supp. 2d 288, 292 & n.5 (D. Conn. 2009)
(CFEPA). For reasons discussed below, the evidence is
insufficient to permit a reasonable jury to find that
plaintiff's race entered into the decision to discharge him.

As with plaintiff's ADEA claim, no dispute exists as to
whether he can meet the first three elements of a prima facie
case. See Carlton, 202 F.3d at 134. With respect to the fourth
prong, "the mere fact that a plaintiff was replaced by someone

32

outside the protected class will suffice for the required inference of discrimination at the _prima facie_ stage for the Title VII analysis." _Zimmerman_, 251 F.3d at 381. As discussed, the parties disagree about who took over plaintiff's duties when he was terminated. In claiming that he was fired for being white, plaintiff asserts that he was replaced by Dormevil, who is African-American. At this stage I will assume that Dormevil took over plaintiff's duties for purposes of analyzing his racial discrimination claim. Plaintiff has met the "minimal" initial burden. _Id._ Defendant has met its initial burden of offering a legitimate, nondiscriminatory reason for plaintiff's termination. _Id._ Thus, plaintiff has the burden of showing that this reason was pretextual, and that he was fired at least in part because he is white. _Id._

Plaintiff first argues that he suffered disparate treatment during the investigation because Pinard credited his African-American coworkers, but not him. "Employers must frequently resolve credibility disputes between employees. These resolutions do not suggest discrimination unless the two employees are 'similarly situated in all material respects.'" _Saenger_, 706 F. Supp. 2d at 514 (quoting _Shumway_, 118 F.3d at 64). As the subject of the investigation, plaintiff was not "similarly situated" to the witnesses Pinard interviewed. Plaintiff also observes that Pinard did not interview Julie

Stach, his assistant store manager, who is white.  But he does not assert that Stach was a witness to any of the alleged conduct, or explain why Stach should have been interviewed. Plaintiff also contends that the sequence of events supports a finding of pretext.  As discussed with regard to plaintiff's age discrimination claim, this argument is unavailing.

Plaintiff further asserts that defendant uses race as a factor both in ranking store managers and in determining whom to develop through the MD program.  This claim is unsupported; the cited portion of the record shows only that defendant documents employees' races to track diversity and "make sure we're equal across the board."  See ECF No. 72-5 at 21; 72-4 at 9; 72-12 at 15.  Similarly, as plaintiff observes, Pinard stated that, "we want to make sure that our diverse candidates and females have good solid plans to progress them."  ECF No. 72-6 at 14.  An attempt by defendant to avoid inequality, without more information, cannot support an inference that plaintiff was terminated due to discriminatory intent.  Cf. Johnson v. Transp. Agency, 480 U.S. 616, 630 (1987) ("[V]oluntary employer action can play a crucial role in furthering Title VII's purpose of eliminating the effects of discrimination in the workplace, and . . . Title VII should not be read to thwart such efforts.").

The record does not raise a triable issue of fact as to whether plaintiff's race was a reason for his termination.

Accordingly, summary judgment will enter on this claim as well.

C.  Retaliation

Finally, plaintiff asserts that defendant retaliated against him in violation of the ADEA, Title VII, 42 U.S.C. § 1981 (and the CFEPA).  The McDonnell-Douglas framework governs his retaliation claim.  Gomez, 10 F. Supp. 3d at 235. "[P]laintiff must demonstrate that (1) []he participated in a protected activity known to the defendant, (2) []he suffered an adverse employment action, and (3) there exists a causal connection between the protected activity and the adverse employment action."  Id. (quoting Hubbard v. Total Commc'ns, Inc., 347 F. App'x 679, 680 (2d Cir. 2009)).  Plaintiff must show that his participation in a protected activity was a "but-for" cause of the adverse employment action.  Nassar, 570 U.S. at 362; Gross, 557 U.S. at 180.  As discussed below, plaintiff's attempt to establish a prima facie case of retaliation founders on his inability to show causation.

Plaintiff can satisfy the first element by demonstrating that he had a good faith, reasonable belief that he opposed discriminatory actions by defendant.  Hopkins, 985 F. Supp. 2d at 254.  As evidence that he complained of discrimination to defendant, plaintiff offers the following comment that he made to Pinard during her investigation: "[O]ne, it's racist because I have two black employees; and two, I've been around and I got

35

no respect.  I've worked for the company for a long time."  ECF
No. 72-3 at 45.  A jury could reasonably infer that in saying he
has "been around," plaintiff was referring to his age, and
sincerely believed that he was voicing a complaint of age
discrimination.  See Kelley v. Sun Microsystems, Inc., 520 F.
Supp. 2d 388, 403 (D. Conn. 2007) (complaints need not be
formal, and plaintiff need not use buzz words, to establish
prima facie case of retaliation).[7]  Whether plaintiff could
reasonably have believed that the investigation was racially
motivated merely because his employees were African-American
need not be resolved.  Cf. Tucker v. Thomas Jefferson Univ., 484
F. App'x 710, 713 (3rd Cir. 2012) ("The mere fact that the
accuser and the plaintiff are of different races does not
support an inference of discrimination.").  This is because
plaintiff cannot satisfy the third element of his prima facie
case, showing causation.

Plaintiff suggests that the failure to investigate his
complaint was itself evidence of retaliatory animus, and thus of
causation, but "an employer's failure to investigate a complaint
of discrimination cannot be considered an adverse employment

---

[7] Plaintiff also asserts that he complained of age-based
discrimination when he was placed on a performance improvement
plan (PIP) prior to his termination.  The portion of the record
cited shows only that he voiced dissatisfaction with the PIP,
not that he raised any concerns related to his age or
discrimination.  ECF No. 72-3 at 11.

action taken in retaliation for the filing of the same discrimination complaint." Fincher v. Depository Tr. and Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010). Plaintiff also argues that he was treated differently than his colleagues who were accused of harassment, giving rise to an inference that he was terminated in retaliation for his complaints. As discussed above, those colleagues were not similarly situated.

Plaintiff complained in the course of, and about, the investigation that led to his termination and he was terminated only weeks after he complained to Pinard. But "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery, 248 F.3d at 95. That is the situation here. Plaintiff cannot use his complaint of unfair treatment to "immunize himself from the reasonable and foreseeable consequences of his misconduct, especially misconduct that pre-dates any protected activity." Saenger, 706 F. Supp. 2d at 519. As a result, he cannot establish a prima facie claim of retaliation.

IV. Conclusion

Accordingly, defendant's motion for summary judgment is granted in full. The Clerk may enter judgment and close the case.

So ordered this 30th day of September 2019.

_____
        Robert N. Chatigny
   United States District Judge